### STEVENS et ux. v. STREUN et al.
### No. 6185.

Court of Appeal of Louisiana.
Second Circuit.
Feb. 4, 1941.

E. W. & P. N. Browne and G. M. Boden-heimer, all of Shreveport, for appellants.

H. V. Booth and L. L. Lockard, both of Shreveport, for appellees.

HAMITER, Judge.

A. J. Stevens and his wife received injuries in a motor vehicular collision wherein a Ford V-8 one-half ton truck, in which they were riding as guests of the owner and operator, D. P. Culverhouse, collided with a Ford V-8 sedan driven by Ernest Ashley during the course of his employment with its owner, John E. Streun; and they brought this suit, seeking recovery of damages, against the said Streun and against the sedan's insurer, the Maryland Casualty Company.

Companion suits, containing substantially identical pleadings and being consolidated herewith, were instituted by or on behalf of other occupants of the truck, for the recovery of damages, against the same defendants. These occupants are D. P. Culverhouse, the minor Charlene Wedgeworth and Joe Miles; and their respective suits are docketed in this court under the numbers 6186, 6187 and 6188, Culverhouse v. Streun, 200 So. 185; Wedgeworth v. Streun, 200 So. 186; Miles v. Streun, 200 So. 186.

The accident occurred about 8:15 o'clock of the night of August 15, 1939, on the Shreveport-Ringgold Highway at a point approximately 2 miles from Loggy Bayou in Bienville Parish. This thorough-fare, in the vicinity of the locus, has an 18-foot asphalt surface, which is rough or bumpy in places, and a 4-foot shoulder on each side. The usual traffic stripe denotes the center of the pavement. The defendant automobile, at the time, was travelling east toward Ringgold, while the truck was proceeding in a westerly or the Shreveport direction.

Plaintiffs charge that the collision was caused solely by the negligence of Ernest Ashley in driving the sedan at an excessive rate of speed, on the wrong side of the highway, and in not keeping a proper lookout.

Negligent driving on the part of Ashley is denied by defendants. · They urge that the accident was proximately caused by the negligence of D. P. Culverhouse, the driver of the truck, in that he "was off his proper side of the highway at the moment of the accident" and "was driving at an excessive rate of speed." Under an alternative plea of contributory negligence, there is presented the defense "that there were four people in the front seat of the Culverhouse truck, and that riding in such a crowded manner interfered with the proper manipulation of the mechanical devices."

Solidary awards of damages against defendants were granted the respective plaintiffs by the district court in all four cases; and defendants appealed from the judgments. The plaintiffs in this cause, A. J. Stevens and his wife, request an increase in their awards.

The evidence is convincing that an unusually high rate of speed was being employed by the defendant vehicle immediately preceding and on the occurrence of the accident. Proof of this fact is found not only in the testimony of two occupants of the truck but also in that of three persons not acquainted· with any of the plaintiffs, and having no interest in the litigation, who were at a house located near the highway and approximately 250 yards west of the locus when the car passed there. Momentarily after observing the sedan, with its tremendously rapid pace, the latter witnesses heard the noise created by the impact. The scene of the accident was visited by them a few minutes later.

On the other hand, an unreasonable speed on the part of the Culverhouse truck does not appear. A rate of from 30 to 40

miles per hour, as fixed by the truck's occupants, is not successfully refuted.

But the pivotal issue in the case, and counsel for the several litigants concede this to be correct, concerns the relative positions of the vehicles on the highway. State appellants' counsel in their brief: "If, under the circumstances, either of them was on the wrong side of the road, that was the gravaman or crux of the case, and we need go no further to ascertain the cause of the collision."

The finding of the trial judge on such issue of fact accords with the contention of plaintiffs, which is that the Culverhouse truck was entirely on the north or its right side of the highway and that the sedan was straddling the traffic stripe. With reference to this, and in giving his theory of the accident, the judge states in a written opinion contained in the record that: "We are quite sure that defendant's automobile was at this time travelling at a high rate of speed and, at the time of the accident, was not on the extreme right-hand side of the road, but was travelling near the center of the road and as the road was somewhat uneven he was zigzagging or the car was tilting from right to left and Ashley did not see the plaintiff's truck until he was within 20 feet of it, as testified to by himself, and that it was at this moment that he pulled his automobile to the right at a slight angle and that the Culverhouse truck, while driving in a straight line on his right side of the road, struck defendant's automobile, all on plaintiff's side of the road * * *. In other words defendant's automobile was on the left side of the black line to some extent, while plaintiff was driving in a straight line and as defendant was within 20 feet of plaintiff when he saw plaintiff's truck he turned to the right, therefore preventing his left front fender from coming into contact with plaintiff's truck, but permitting plaintiff's left front fender to first contact defendant's automobile as was shown at about the wheel. The cause of the accident was the fact that defendant's automobile was being driven upon its left-hand side of the road or at least partly astride the center line."

The found positions of the vehicles are supported by an overwhelming preponderance of the testimony, a discussion of which is unnecessary here; and such finding and also the theory of the accident advanced by the district judge, are, we think, sustained by the physical facts disclosed by the record.

The initial contact between the two vehicles, as is explained in the above-quoted extract, involved the left front portion of the truck and the left side of the defendant car at about the front wheel; thus showing that the truck struck the sedan. The Culverhouse machine then turned in an arc to the left, contacted and damaged the remaining portion of the sedan's left side, and proceeded into the ditch situated south of the road. The defendant car, after its rear end had swerved southeasterly, rolled sidewise and barrel like in the direction that it was travelling. It turned over at least twice—possibly three times—and came to rest on all four wheels facing northeasterly, with the front portion occupying the south half of the pavement and the rear part off it. In describing the position of the sedan with reference to the asphalt surface, during the rolling process, its owner testified, "Well, the front end, to about the middle of the car, was on the highway. The remainder of it was on the shoulder and in the ditch."

If the machine driven by Ashley had been on the extreme south side of the pavement, and as far to the right as he could get it, as he contends and testified, the striking thereof by the truck in the manner above shown would have pushed it completely into the ditch. Its rolling sidewise and along the highway could not have happened had the contended for position prevailed. This rolling maneuver, as well as the manner of contact, occurred, it seems to us, only by reason of the fact that the sedan was being driven about the center of the highway and toward the right at the moment of impact. Hence, there appears no manifest error in the described factual finding of the trial judge, and it will not be disturbed; and in view of this found situation, the driver Ashley was correctly held to have been grossly negligent.

Under the alternative plea of contributory negligence it is contended that the riding of four persons in the cab or front seat of the Culverhouse truck prevented a proper handling of that vehicle. According to the evidence, those occupants were comparatively small and slender in stature, and the seat was 48 inches wide; and it does not clearly appear that an over-crowded condition existed. If it could be said, however, that their occupying the machine in the described manner

was negligence in contemplation of law; such negligence would not bar recovery herein for the reason that it had no causal connection with, or was not a contributing cause of, the accident. The Culverhouse truck, as above shown, was entirely on its proper side of the highway. The plea of contributory negligence, therefore, was correctly overruled.

Plaintiff A. J. Stevens was awarded judgment for $6,040, of which amount $40 was for the cost of a brace, while the balance covered his injuries, pain and suffering, and loss of earnings during disability. The injuries sustained by him, together with their effect, are well described by the district court as follows: "A. J. Stevens, 33 years of age, a farmer, was seriously injured when the Culverhouse truck turned over in the ditch. Mr. Stevens was riding on the floor of the truck and as the truck over-turned it threw him out and the truck over-turned on him. It was some few minutes before he was extricated. He was unconscious and remained so for a day. His injuries are described as a compressed fracture of the eighth, ninth and tenth dorsal vertebrae. His back is stiff, rigid. He was kept in a cast for about two months and is now wearing a steel brace. The physicians for both sides agree that he is presently totally disabled and will be so for a period of one to two years, after which he will have a permanent disability of 25% or 30%. His injuries were very painful. At the trial he stated that he still suffered some pain at night. He is a farmer and owns a forty-acre farm. Has a wife and child and earns about $400.00 per year, as covered by stipulation of counsel filed in the record. Mr. Stevens claims an injury to his eyes as a result of the accident, which prevents him reading more than a few lines before the words run together. A doctor testified that his eyes were 95% normal, and this was about the average for a man of his age; that the eyes may be affected somewhat by his physical condition, but would resume their normalcy as his physical condition improved. Mr. Stevens also claimed that by reason of the accident he suffered a spell of pneumonia some ninety days after the accident. The testimony on the question of injury to the eyes and that the pneumonia was a result of the accident is not to my mind sufficient to warrant special damages therefor."

The award to Mr. Stevens, in view of his mentioned condition, is certainly not excessive. Neither do we think that the jurisprudence of this state justifies our increasing the named amount. Consequently it will not be changed.

The judgment for $100 granted to Mrs. Stevens is correct. As we appreciate the evidence affecting her claim, she sustained only a sprain of the muscles in her right shoulder producing pain in that region.

Therefore, for the reasons above given, the judgment is affirmed.