132 So.2d 72 (1961)
Maybian Novo SHERRILL, Plaintiff-Appellant,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant-Appellee.
No. 317.
Court of Appeal of Louisiana, Third Circuit.
July 12, 1961.
*73 John M. Sherrill, III, Lloyd G. Teekell, Alexandria, for plaintiff-appellant.
Provosty, McSween, Sadler & Scott by LeDoux R. Provosty, Jr., Alexandria, for defendant-appellee.
Before TATE, HOOD and SAVOY, JJ.
TATE, Judge.
This is a suit to recover for personal injuries suffered by a pedestrian when she tripped and fell on the premises of a "drive-in" bank branch. Made defendant is the bank's public liability insurer. The trial court held that the plaintiff was contributorily negligent and dismissed her suit, and the plaintiff appeals.
The accident occurred before noon on June 4, 1958. The plaintiff had left her car in the bank's parking lot and was proceeding on foot to the "walk-in" teller's window to make a deposit. Entrance to this teller's counter was ordinarily provided through a side-door leading off a driveway for the automobiles of customers intending to use another counter, the adjacent drive-in teller's window for motorists. This side-door, however, was closed at the time in order to permit a workman to paint behind it. Instead of using the door-entrance provided, therefore, the plaintiff proceeded toward the walk-in teller through a narrow passageway between the wall and the automobile driveway. Her heel caught in a shallow slot or trench across the passageway, and the plaintiff tripped and fell, suffering the damages for which this suit is brought.
The passageway used by the plaintiff in this instance was a little over four feet long, and it was separated by a heavy metal railing from the automobile driveway. There was approximately 17 inches' clearance between the wall and the railing, which the preponderance of the evidence indicates was sufficient for a pedestrian to walk forward through italthough, as one of the witnesses expressed it, it was "a pretty close fit" (Tr. 71).
The slot upon which the plaintiff tripped was 1½ inches deep and 4 to 5 inches wide; it ran across the end of the passageway nearer the teller's window. The purpose of the slot was to afford a receptacle for an overhead sliding door, which was pulled down after closing hours, so as to shut off the bank premises from the parking lot and the street. In order to permit the lowering of this overhead door, there was also a break in the heavy metal railing at the place of the slot.
The plaintiff had been a customer of the branch bank since the drive-in facilities (including the passageway and the slot) had been completed approximately six years before the accident. The evidence reflects that, although the bank intended for its walk-in customers to use the side-door and a large hallway to which it led, nevertheless prior to the accident pedestrian customers often used the narrow outside passageway, it being shorter and leading more directly to the walk-in teller's window. In the absence of manifest error, on appellate review we will accept the trial court's determination that the plaintiff had used this narrow passageway at least several times in the past.
The legal principles applicable to this litigation are reasonably well settled.
In the absence of warning of danger in the use of a pedestrian passageway open to the public, pedestrians have "a right to assume, that it was sufficient for the purpose, subject only to such imperfections as might be readily observed *74 by use of ordinary care," Corkern v. Travelers Insurance Co., 229 La. 592, 86 So.2d 205, 207. "The courts have never fixed the size or nature of a defect or depression in a sidewalk which could be called defective and dangerous. Each case depends on the particular circumstances relative to the particular defect, including the position of the defect in the sidewalk, its depth, and the opportunity of observing the defect by a person ordinarily using the sidewalk." Rodriguez v. City of Sulphur, La.App. 1 Cir., 28 So.2d 771, 773. (The court held in the latter decision that a depression in the sidewalk was a negligent hazard because it "was sufficiently deep and wide to interfere with a person walking and who might assume that the walk was in a reasonably good condition." 28 So.2d 772-773.)
In Merchant v. Montgomery Ward & Co., La.App. 1 Cir., 83 So.2d 920, 922, certiorari denied, the pedestrian was held not to have been contributorily negligent for failing to appreciate the hazard of a chain across her pathway. In summarizing the jurisprudence the court there stated that "`a plea of contributory negligence if sustained, operates as a complete bar to recovery. As applied to sidewalk and street cases, the doctrine does not mean that a pedestrian must keep his eyes glued upon the surface in front of him; he may properly assume for example, that a paved sidewalk does not contain holes or obstructions that necessitate constant vigilance. The matter of course may be conditioned by the traveler's familiarity with the public way on which he is traveling and with other public ways in the neighborhood.' * * * `All that is required of a pedestrian upon a sidewalk is ordinary care and this does not necessitate his looking constantly where he is going. He has a right to assume the sidewalk is safe for travel, and where one sustains injuries by reason of an unsafe condition of a sidewalk, the burden to show that he was not using ordinary care, or contributed to such injuries by his own negligence, rests upon the [owner of the premises]' * * * Whether an obstruction or defect creates an obvious hazard which the pedestrian should have observed and avoided; whether on the other hand it was a hazard in the nature of a trap, which would not alert the eye of the pedestrian of ordinary care to danger, occupied as it is entitled to be with myriad other observations besides the ground in front; depends not primarily on objective criteria of size, situation, color (useful as these are in determining the visual data from which the pedestrian may deduce danger), but rather upon all the surrounding circumstances in which that particular pedestrian finds himself at the time of the accident * * *." 83 So.2d 922, 923, 924.
As a general rule, the owner of premises "is not liable for an injury to an invitee resulting from a danger which was obvious or should have been observed by the invitee in the exercise of reasonable care, or from a condition which was as well known or as obvious to the invitee as to the invitor," Alexander v. General Accident Fire & L. Assur. Corp., La.App., 1 Cir., 98 So.2d 730, 734. "However, even though the invitee has knowledge of the danger, or the defect is obvious, the duty of the owner or occupant to use reasonable care to keep the premises reasonably safe for invitees remains, and it runs concurrently with the duty of the invitee to protect himself, so that, where the invitee does not fully appreciate the danger or is without fault, the owner or occupant may be held liable for the injury," 65 C.J.S. Negligence § 50 p. 545.
We have decided that the trial court did not commit manifest error in holding the plaintiff to be contributorily negligent. In view of this conclusion, it is unnecessary to discuss or expressly decide the question of the bank's negligence, although we shall assume for purposes of this opinion that the bank-insured had negligently provided for pedestrian use the passageway in which the plaintiff was injured, *75 without barrier or other warning sufficient to enable pedestrians to avoid the potential hazard of tripping in the shallow slot across it.
In arguing that the plaintiff was not contributorily negligent, her counsel makes out an extremely strong, well-argued, and persuasive case that the plaintiff could not reasonably be called upon to anticipate the hazard in her path of a depression cut across the paved floor of the only passageway at the time provided at the branch bank for pedestrian customers, and that she was not negligent in failing to observe or to appreciate the danger of such an unanticipated hazard, especially since she saw another pedestrian customer at the teller's window who had used the passageway immediately prior to her own entrance into it. (See comment in Rodriguez case, above-cited, that "It is common knowledge that a person walking behind another pedestrian does not usually give as much attention to his footsteps as he does when walking alone". 28 So.2d 773.)
Against these forceful contentions are the following factual circumstances, in the context of which the plaintiff's use of due care or her failure to do so must be assessed: The plaintiff's only witness besides herself testified that the trough in the pavement was "very evident" (Tr. 70), an observation to some extent corroborated by the photographs; and the presence of the slot was also to some extent accentuated by the break in the heavy metal side-railing, at the place of the slot. Further, according to the trial court's finding, the plaintiff had used this passageway as a short-cut to the walk-in teller's window on at least several earlier occasions. Also, the passageway was extremely narrow, a "pretty close fit" for a pedestrian (Tr. 71), which should reasonably imply to the user that the way was not ordinarily intended for pedestrian use, thus further reasonably implying a duty to use more careful observation than usual before entering and proceeding to use it.
Taking into consideration all of these circumstances, we are unable to hold, although the question is close, that the trial court erred in finding the plaintiff's recovery barred by her own failure to see and avoid the depression creating a hazard in her path, which previously she should reasonably have observed and appreciated.
For the foregoing reasons, at the cost of the plaintiff-appellant, the trial court judgment dismissing her suit is
Affirmed.