531 So.2d 1142 (1988)
Lynn Kuck, Wife of/and John KUCK
v.
CITY OF NEW ORLEANS, et al.
No. 88-CA-0296.
Court of Appeal of Louisiana, Fourth Circuit.
September 16, 1988.
Carter B. Wright, Charlton B. Ogden, III, Ogden & Ogden, New Orleans, for plaintiffs/appellees.
Okla Jones, II, City Atty., A. Bowdre Banks, Jr., Val K. Scheurich, III, Deputy City Attys., Don J. Hernandez, Chief Deputy City Atty., New Orleans, for defendant/appellant.
Before GARRISON, BYRNES and LOBRANO, JJ.
LOBRANO, Judge.
Appellant, the City of New Orleans appeals the judgment in favor of the plaintiff, Lynn Kuck. The trial judge awarded the plaintiff general damages in the amount of $130,000, reduced to $104,000 because of the plaintiff's 20% comparative fault, and a total of $12,047 in special damages, including future and past medical expenses, as a result of the injuries she sustained in a fall on a city sidewalk.
On September 24, 1984, Lynn Kuck, a thirty-five year old mother of one child, fell while walking on a brick sidewalk on Robert *1143 Street in the City of New Orleans. Mrs. Kuck had just visited Dr. Bruce Razza at his office located at Robert and Prytania Streets. She was under the doctor's care because of a surgically fused cervical disc in her neck. She had been hospitalized from August 29, 1984 until her discharge on September 9, 1984. On September 24, 1984, she was visiting Dr. Razza for a second check-up after the surgery. Dr. Razza indicated that Mrs. Kuck was doing well and showed much improvement after the surgery.
Mrs. Kuck left the doctor's office with her husband. She and her husband were walking on a bricked public sidewalk to their parked car approximately one block away Mr. Kuck walked on the left of his wife. Mrs. Kuck fell when she stepped into a hole where a brick or bricks were missing. The hole was covered by grass. She fell to her right toward the street, down a slight incline and landed face down in some shells. Mr. Kuck tried to assist his wife after she fell. Dr. Razza was summoned to the scene. Subsequently an ambulance arrived and brought Mrs. Kuck to St. Charles General Hospital. Following the fall Mrs. Kuck felt pain in her right ankle and neck. Dr. Razza stated that Mrs. Kuck's fall caused the cervical graft to dislodge. Mrs. Kuck remained hospitalized after the fall until October 2, 1984. Dr. Razza stated that Mrs. Kuck needs to undergo repeat surgery in order to re-fuse the disc. Mrs. Kuck indicated she is willing to undergo the recommended surgery but has been unable to do so because of cost.
LIABILITY OF THE CITY
In a similar situation involving a defective sidewalk, this court concluded that the City of New Orleans was strictly liable for plaintiff's injuries suffered as a result of a fall. C.C.Art. 2317; Carpenter v. State Farm Fire and Casualty Co., 411 So.2d 1206 (La.App. 4th Cir.1982) writ den., 415 So.2d 951 (La.1982). See also Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980), wherein the Supreme Court first recognized a municipality's fault under Article 2317.
The City acknowledges that the principles of Article 2317 liability are applicable to municipalities, however it argues that Section 4 of Act 536 of 1950 shifts liability to the adjacent property owner. The City quotes the following language of that Act as supportive of its position:
"All paved and unpaved banquettes or sidewalks in the City of New Orleans shall be kept in repair and maintained in good order and condition by the owners of the real properties abutting the same, provided, however that the cost of such maintenance and repair at intersections shall be borne by the City of New Orleans."
The above cited statute is uncodified, and to this court's knowledge has never been cited in similar cases. There appears to be no jurisprudence interpreting it. However, similar statutes have been interpreted adverse to the City's position.
In Toppi v. Arbour, 119 So.2d 621 (La. App. 1st Cir.1960) the Court recognized established jurisprudence which prevents a municipality of relieving itself of liability by shifting the burden to abutting property owners. The Court further held that any statute which purports to relieve a municipality of liability "must be subjected to the rule of strict construction...." Id. at 626. The Court ultimately concluded that the statute's purpose was to allow the municipality to hold an adjoining property owner financially responsible for the costs of maintaining the adjoining sidewalk.
In Brown v. Parish of East Baton Rouge, 126 So.2d 173 (La.App. 1st Cir. 1960), cert. denied March 3, 1961, the Court, on rehearing, held that "... unless expressly so authorized by the legislature of this state, no municipality may impose personal liability upon an abutting property owner...." Id. at 181, citing Betz v. Limingi, 46 La.Ann. 1113, 15 So. 385 (1894). The statute at issue in that case, Act 169 of 1898, as amended by Act 31 of 1904, provided in part:
"... and all paved and unpaved banquettes in said City shall be kept in repair by the owners of real property fronting thereon." *1144 The Court found no legislative intent to permit the municipality to shift its burden of tort liability to an abutting property owner.
And finally, in Snow v. City of Shreveport, 287 So.2d 647 (La.App. 2nd Cir.1973), writ denied, 290 So.2d 332 (La.1974), the Court, in dicta, stated that similar municipal ordinances merely create the legal relationship between the city and adjoining landowners; and that tort liability against the landowner results only from his actions in creating or causing a defect.
With these principles in mind, we conclude the statute cited by the City does not express a true legislative intent to shift the burden for tort liability to the adjoining landowner. The rule of strict construction requires us to reach this result.
In oral argument, the City urges we hold that the utility of the sidewalk outweighs the risk of harm created by the missing bricks, and therefore that risk was not unreasonable, citing Rigao v. Sewerage and Water Board, 467 So.2d 1263 (La.App. 4th Cir.1985), writ denied 469 So.2d 988. We disagree. Although the utility of the sidewalk is fairly obvious, we conclude the risk of harm created by the missing bricks, and the partially obscured hole, is so unreasonable as to sustain the City's liability. Sidewalks are placed for the benefit of the public, and invites their use. A partially hidden hole caused by a defect creates an unsuspecting and unexpected risk of harm to the pedestrian. We hold it is an unreasonable one.
The City also urges the trial court erred in assessing only 20% comparative negligence to the plaintiff. The City argues that Mrs. Kuck's physical condition made her decision to walk to the parked car an unreasonable one, and suggests that her actions amounted to assumption of the risk rather than comparative negligence.[1]
In retrospect Mrs. Kuck's decision produced unfortunate results. However, but for the unforeseen defective sidewalk which caused her fall, a one block walk for a woman in her physical condition cannot amount to greater comparative negligence than assigned by the trial court.
The City next argues that the trial court abused its discretion in fixing the amount of general damages. Where there is an abuse of the trial court's discretion, the scope of appellate review is limited to lowering (raising) the award to the highest (lowest) point within the trial court's reasonable discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
A tortfeasor takes his victim as he finds him. He is responsible in damages for the consequences of his tort although the damages so caused are greater because of a prior condition. Reck, supra. In the present case, the injuries sustained by the victim are serious, made more so because of the victim's previous surgery. She dislodged a cervical fusion which requires refusion surgery. The record shows she has suffered much pain. We conclude there is no abuse of discretion by the trial court.
The City also contends that the plaintiff failed to mitigate her damages by her failure to submit to the needed second surgery. Unlike the plaintiff in Pisciotta v. Allstate Ins. Co., 385 So.2d 1176 (La. 1979), who was undecided about whether to submit to the needed operation, Mrs. Kuck desires the corrective surgery but has not undergone the procedure because of financial considerations.
Finally, the City contends that the trial court erred in not reducing the special damage award by the plaintiff's 20% comparative fault. La.C.C.Art. 2323; Turner v. Safeco Ins. Co. of America, 472 So.2d 43 (La.App. 1st Cir.1985). The plaintiff agrees with this argument.
We, therefore, affirm the trial court's judgment for general damages but amend the amount of the special damage award reducing it by 20%, the comparative fault of the plaintiff.
*1145 AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] Although it does not affect the present matter, we note that assumption of the risk is not a total bar to a plaintiff's recovery in a strict liability case. Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988).