619 So.2d 723 (1993)
Brenda Braud BIRNER and William B. Birner
v.
The CITY OF NEW ORLEANS and New Orleans Public Service, Inc., and their liability insurance carrier, XYZ Insurance Company, and Loyola University of the South and their liability insurance carrier, Lloyds of London Insurance Company.
No. 92-CA-1129.
Court of Appeal of Louisiana, Fourth Circuit.
May 27, 1993.
*724 William B. Birner, Birner & Birner, LaPlace, LA, for appellant.
Nel F. Vezina, Gary T. Breedlove, Vezina and Associates, Gretna, LA, for defendant, appellee.
Before CIACCIO, LOBRANO and LANDRIEU, JJ.
LANDRIEU, Judge.
Plaintiffs, Brenda Braud Birner and her husband, William B. Birner, appeal the dismissal of their claims on a motion for summary judgment granted in favor of defendants Loyola University of the South ("Loyola") and its insurer, Peter Renshaw Catchpole ("Catchpole"). We affirm.

FACTS
On January 21, 1987, Mrs. Birner, a third-year law student of Loyola University parked her car on Broadway Street, New Orleans approximately three car lengths south of its intersection with Dominican Street.[1] After she collected her book-bag from the trunk of her vehicle, Mrs. Birner proceeded to walk towards St. Charles Avenue. Stepping on a four inch drop in the sidewalk, she fell forward and hit her left knee on a protruding metal utility box, owned by the New Orleans Public Service Inc., that was embedded in the concrete. The depression was not in the vicinity of an entrance to Loyola's property. Mrs. Birner managed to limp to the end of the street where she received assistance. A Loyola University security guard transported her to Southern Baptist Hospital.
Upon arriving at the hospital's emergency room, the admission's registrar, Kathy Kalbacher, inquired whether Loyola would be responsible for her medical expenses. When plaintiff was unable to respond one way or another, Kalbacher phoned the university. According to Kalbacher's deposition, Ella Mae Green, the individual who answered the call, replied "Yes, indeed, Loyola was going to cover the expenses." As a result of the accident, surgery was performed to remove plaintiff's shattered kneecap (patella).
The plaintiffs filed a personal injury suit against the City of New Orleans, New Orleans Public Service Inc., Loyola University of the South and their respective insurers *725 including Loyola's insurer, Peter Renshaw Catchpole (incorrectly named in the petition as Lloyds of London Insurance Company).[2] The specific claims alleged against Loyola and Catchpole included (1) a claim of negligence as property owner of the sidewalk upon which Mrs. Birner was walking, and (2) the breach of a duty of care undertaken by an agent of Loyola to pay Mrs. Birner's medical expenses.
In its answer to the petition, Loyola and Catchpole denied plaintiffs' assertions and pled "negligence, strict liability, fault, or intervention of individuals, entities or instrumentalities including acts of God for whom these defendants have no legal responsibility and over whom these defendants had no control"; alternatively, they pled negligence on the part of Mrs. Birner. After conducting discovery, Loyola and Catchpole filed a motion for summary judgment as to the claims made by the plaintiffs and various other parties in this matter.
Following a hearing, the trial court granted summary judgment and dismissed the claims of the original plaintiffs and the claims of the City of New Orleans and New Orleans Public Service, Inc., against Loyola and Catchpole.[3]

DISCUSSION
Plaintiffs contend the trial court committed reversible error when it granted the motion for summary judgment in favor of Loyola and Catchpole. Specifically, they argue that, considering the conflicting testimony in the depositions of Ella Mae Green and Kathy Kalbacher regarding the contractual liability of Loyola and the duty of care owed by Loyola to its students and employees, genuine issues of material fact exist.
La.Code Civ.Proc.Ann. art. 966 (West 1984) provides that summary judgment shall be rendered
... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.
Once a motion for summary judgment has been made and supported, the opposing party must affirmatively show that there remains a genuine issue for trial. La.Code Civ.Proc.Ann. art. 967 (West 1984); Osborne v. Vulcan Foundry, Inc., 577 So.2d 318 (La.App. 4th Cir.1991).
In support of their motion for summary judgment, Loyola and Catchpole attached the depositions of Ella Mae Green, Kathy Kalbacher and Mrs. Birner, an act of sale including a property description and land survey of the property where the accident occurred.
By an act of sale dated December 11, 1984 and passed before Charles I. Denechaud, III, Notary Public, Loyola University purchased the property located adjacent to the sidewalk in question from St. Mary's Dominican College. In order to determine the exact location of its boundaries, Loyola hired the office of Gandolfo, Kuhn & Associates, Civil Engineers & Land Surveyors, New Orleans, Louisiana to perform a survey of their property. The property purchased by Loyola did not include the sidewalk where Mrs. Birner fell; Loyola's property line stopped where the sidewalk began.
An abutting property owner is not generally liable for repairs or maintenance of public sidewalks, except where the defects in the sidewalks were caused by him. Murphy v. City of New Orleans, 537 So.2d 1183 (La.App. 4th Cir.1988), writ denied 541 So.2d 896 (La.1989); Randall v. Feducia, 507 So.2d 1237 (La.1987); Carpenter v. State Farm, 411 So.2d 1206 (La. App. 4th Cir.1982), writ denied 415 So.2d 951 (La.1982)). Since Loyola did not cause the defect in the sidewalk, the University did not owe a duty to the plaintiffs with regard to the injury Mrs. Birner sustained on the sidewalk adjacent to its property.
*726 Having concluded Loyola owed no duty to plaintiffs to maintain the sidewalk, we next consider whether Loyola obligated itself to pay Mrs. Birner's medical bills. Although Ms. Kalbacher stated in her deposition that a Loyola representative told her that they would pay Mrs. Birner's medical expenses incurred from her slip and fall, there is no written evidence of this guaranty or suretyship. Furthermore, in contrast to Ms. Kalbacher's testimony, Ms. Green stated that she did not have the authority to guarantee payment of Mrs. Birner's bills. Her conversation with Southern Baptist Hospital addressed the question of whether or not Mrs. Birner personally had student insurance and what the student insurance company would pay if she had coverage. Mrs. Birner had not availed herself of the student insurance, but rather, maintained her own policy of health insurance.
A suretyship is an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not. La.Civ.Code Ann. art. 3035 (West 1952). Suretyship cannot be presumed; it ought to be expressed, and is to be restrained within the limits intended by the contract. La.Civ.Code Ann. art. 3039 (West 1952). Since parole evidence is inadmissible to prove any promise to pay the debt of a third person, one is not liable as a surety unless his obligation is assumed in a writing which, in express terms, sets forth the obligation. La.Civ.Code Ann. art. 1847 (West 1987); Whitney National Bank v. Palermo, 505 So.2d 95 (La.App. 4th Cir.1987).
Since there were no genuine issues of material fact regarding Loyola's liability as an abutting property owner nor Loyola's obligation to pay the debt of plaintiffs, Loyola and Catchpole were entitled to judgment as a matter of law. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Although this location is approximately one block from the law school, it is adjacent to St. Mary's Hall, Loyola University property.
[2] All defendants answered the plaintiffs' petition and contemporaneously filed various defenses and cross claims.
[3] None of the other defendants appealed the trial court judgment.